**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ASTORIA FEDERAL SAVINGS & LOAN ASSOCIATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 95-468C |
| | ) | (Judge Thomas C. Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE**
**CONCERNING PLAINTIFF'S ABANDONED AND DISAVOWED DAMAGE CLAIMS**

Pursuant to Rule 12 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests an order in limine to exclude irrelevant testimony and evidence at trial concerning two theories of damages -- replacement costs of capital and the costs of a mutual to stock conversion -- which plaintiff, Astoria Federal Savings and Loan Association ("Astoria"), has acknowledged it has abandoned or disavowed.

Plaintiff has abandoned its claim for the replacement cost of capital (i.e., of goodwill or regulatory capital) because, as it expressly acknowledges, decisions of the Court of Appeals for the Federal Circuit preclude such claims. Plaintiff has disavowed any potential claim for the costs of the conversion of Fidelity New York, FSB ("Fidelity") from a mutual to stock institution because one of its damages experts, Dr. Donald M. Kaplan, has expressly opined that Fidelity's conversion was not caused by the breach and would have occurred irrespective of the breach. Therefore, to streamline pre-trial preparations and the presentation of evidence at trial, and to preclude the prejudice that would ensue if plaintiff attempted to introduce evidence concerning

these damage theories, we respectfully request that the Court order that no evidence concerning these damage theories be permitted to be introduced into evidence at trial.

**A. Plaintiff's Abandoned Cost Of Replacement Capital Claim**

In an expert report submitted by one of plaintiff's experts, Professor Christopher James, plaintiff sought damages of approximately $238 million for the costs Professor James hypothesized would have been borne by Fidelity if it had attempted to replace the goodwill and regulatory capital that was phased out as a result of the passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"). Report of Prof. Christopher James (July 27, 2001). As part of its briefing with respect to our summary judgment motion as to damages, plaintiff expressly acknowledged, however, that, based upon precedent from the Federal Circuit, it was abandoning its claim for the cost of replacement capital:

> Astoria also asserted a claim based on the cost of replacement capital utilizing the cost of a hypothetical issue of preferred stock as a proxy to measure the value of the lost supervisory goodwill. While Astoria continues to believe that is a reasonable means of calculating damages, it is clear that the Federal Circuit feels otherwise. Since the holdings of the Federal Circuit are binding on this Court, Astoria does not, absent some change in the applicable law, propose to proceed with its damage claim for cost of replacement capital.

Pl. Supp. Br. in Op. to Def. Mot for Partial Summ. J. (June 15, 2005), at 2 (citing Fifth Third Bank of W. Ohio v. United States, 402 F.3d 1221, 1237 (Fed. Cir. 2005)). This Court has recognized that Astoria has withdrawn its claim for the cost of replacement capital. Op. and Order on Def. Mot. for Summ. J. (Aug. 22, 2006) at 5 n.4.

Counsel for plaintiff has further acknowledged that Professor James will not appear as a witness at trial, stating that Astoria only intends to present one expert (Dr. Kaplan) at trial:

> THE COURT: Can you tell me how many experts you're planning?
>
> MR. EISENHART: At this point I only have one expert, Your Honor. The second expert that I had identified was on a cost of replacement capital issue, and that's the one that I've conceded we would clearly be barred under the present Federal Circuit law, so I don't intend to present him.

Hearing Tr. (Sept. 7, 2006), at 7-8. In short, plaintiff has repeatedly acknowledged that it has abandoned a cost of replacement capital damage claim, this Court has recognized this claim has been withdrawn, and plaintiff should not be permitted to prejudice us by presenting evidence to support a cost of replacement capital claim at trial.

**B. <u>Plaintiff's Disavowal Of Any Damages For The Costs Of Conversion</u>**

Plaintiff has similarly abandoned any claim for damages connected with the costs of Fidelity's conversion from a mutual to stock institution. During expert discovery, Astoria presented no claim or theory of damages connected with the costs Fidelity incurred in converting. Indeed, plaintiff's expert, Dr. Kaplan, denied a causal relation between the breach and the conversion:

> Irrespective of the breach, Fidelity would have converted during approximately the same general time frame. By 1993, most of the large mutual thrifts in the country had already converted to stock form.

Expert Witness Report of Dr. Donald M. Kaplan (June 29, 2001), at ¶ 44. Dr. Kaplan reiterated this opinion during his deposition:

Q: So in the "but for" world, Fidelity would have converted around the same time?

A: There's -- there's no doubt in my mind that in the "but for" world it would have.

Given Dr. Kaplan's statements concerning the cause of the conversion, and plaintiff's decision not to assert any damages claims for the costs of the conversion, no expert testimony can now be heard with respect to any claim for the costs of the conversion.[1] See RCFC Rule 37(c). In addition to the restrictions on expert testimony set forth in the Rules of this Court, the procedural orders applicable to the Winstar-related cases state that no testimony shall be received from plaintiff's expert, if it has not been properly disclosed. See Procedural Order No. 2: Discovery Plan at § V(A)(4) (Aug. 7, 1997, Ct. Fed. Cl.). In addition to the fact that its remaining expert has set forth no claim for conversion costs, plaintiff presented no claim for conversion costs in its summary judgment brief with respect to damages. Therefore, it is barred from raising any damage claim for the costs of Fidelity's conversion at this late stage.

---

[1] That is not to say that the conversion did not mitigate the effect of the breach. Indeed, it has been our consistent opinion that, with the conversion, any effect of the breach ended. Following the conversion the thrift was considered "well capitalized." In fact, within days of the conversion the capital plan was lifted. See Rebuttal Expert Report of Andrew S. Carron (April 15, 2005), at 3 ("Fidelity was able to overcome any capital deficiency by converting in 1993 and becoming well capitalized."); Expert Report of Andrew S. Carron (Jan. 17, 2002), at 14 ("Fidelity mitigated its capital deficiency, however, by converting in 1993 and becoming well capitalized."); see also Fidelity 1993 Annual Report at 28 (PAA014 2150) (noting that, eleven days after the conversion, the Office of Thrift Supervision terminated the thrift's capital plan with the thrift subsequently categorized as "well capitalized" pursuant to the definitions of the Federal Deposit Insurance Corporation Improvement Act of 1991). Because plaintiff asserts the conversion was not caused by the breach but by other reasons, plaintiff cannot assert damage claims for the conversion costs. That does not estop us, however, from demonstrating that the conversion did, in fact, have the effect of mitigating the losses allegedly caused by the breach.

**C. This Court Should Preclude The Introduction Of Evidence Concerning Plaintiff's Abandoned Costs Of Replacement Capital Claim And Any Potential Claim Respecting Conversion Costs**

Given plaintiff's abandonment of its cost of replacement capital claim and its disavowal of any intention to bring a cost of conversion claim, any testimony or evidence concerning these costs are irrelevant to the issues now before this Court and should be barred from introduction at trial. See Fed. R. Evid. 401, 403.

The purpose of a motion in limine is "to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters." Inslaw, Inc. v. United States, 35 Fed. Cl. 295, 302-03 (1996), aff'd, 40 F.3d 843 (1998). "Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial." Id. (citing Baskett v. United States, 2 Cl. Ct. 356, 359 (1983)). The Court of Federal Claims has consistently held that a ruling in limine "is a remedy designed to increas[e] trial efficiency and promot[e] improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial." Weeks Dredging & Contracting, Inc. v. United States, 11 Cl. Ct. 37, 45 (1986) (citing Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd., 505 F. Supp. 1125, 1140 (E.D. Pa. 1980)); see also Inslaw, 35 Fed. Cl. at 302-03; Int'l Graphics Div. of Moore Business Forms, Inc. v. United States, 5 Cl. Ct. 100, 104 (1984).

Further, we would suffer prejudicial harm if we must now attempt to prepare to defend against evidence concerning undisclosed cost of replacement capital or conversion cost claims, which Astoria has indicated long ago it would not pursue, and which, with respect to the cost of conversion claim, the parties have never briefed. At this late date, it would cause prejudicial

harm to defendant to have to prepare for trial related to these irrelevant, abandoned, and disavowed damages claims.

Therefore, pursuant to Federal Rules of Evidence 401 and 403, this irrelevant evidence should be excluded from trial.

## CONCLUSION

For the foregoing reasons, any evidence concerning the cost of replacement capital damages or cost of conversion damages should be excluded as irrelevant and unduly prejudicial to defendant.

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

DAVID M. COHEN
Director

JEANNE E. DAVIDSON
Deputy Director

/s/ William F. Ryan by Jeanne E. Davidson

WILLIAM F. RYAN
Assistant Director

/s/ John H. Roberson

JOHN H. ROBERSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 353-7972
Fax (202) 514-8640

OF COUNSEL:
ARLENE PIANKO GRONER
ELIZABETH M. HOSFORD
BRIAN A. MIZOGUCHI
JOHN J. TODOR
SAMEER YERAWADEKAR

December 7, 2006

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December 2006, a copy of the foregoing "DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING PLAINTIFF'S ABANDONED AND DISAVOWED DAMAGE CLAIMS " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John H. Roberson
John H. Roberson