IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ASTORIA FEDERAL SAVINGS & LOAN ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 95-468C<br>(Judge Thomas C. Wheeler) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO BAR EVIDENCE OF THE OTS INVESTIGATION OF BRUNO GRECO AND THOMAS DIXON LOVELY AND THEIR VOLUNTARY SETTLEMENT WITH OTS**

Plaintiff Astoria Federal Savings & Loan Association gave notice in its Witness Lists filed on November 29, 2006 and February 15, 2007 that it intends to call as witnesses at trial Bruno Greco, the former President of Fidelity New York, F.S.B. and Thomas Dixon Lovely, Fidelity's former CEO and Chairman. The Department of Justice stated in its November 29, 2006 filing (and presumably will confirm in its Final Witness List due on March 15, 2007) that it intends to question Messrs. Lovely and Greco about an investigation into certain of their activities commenced by the Office of Thrift Supervision in or about 1993 and the voluntary settlements that concluded that investigation in December 1995 (Greco) and January 1996 (Lovely). Astoria moves *in limine* to bar such questioning and to bar the introduction into evidence of any evidence, documentary or testimonial, concerning the investigation or the voluntary settlements that concluded the investigation.

## Statement of Facts

In September 1993, in the course of private litigation between Fidelity and a real estate developer, evidence emerged that Bruno Greco (Fidelity's former President, who by then was no longer employed at Fidelity) and Thomas Dixon Lovely (Fidelity's former CEO and then-current Board Chairman) had some ten years earlier purchased and later resold at a profit condominium units in a development run by a development company whose principal was a borrower from Fidelity. An investigation was commenced by the Office of Thrift Supervision into whether these transactions constituted an impermissible conflict of interest. That investigation concluded over two years later, when Mr. Greco (in December 1995) and Mr. Lovely (in January 1996) agreed voluntarily to accept consent cease and desist orders and to pay restitution in the amounts of $90,000 (Mr. Greco) and $100,000 (Mr. Lovely).[1] Neither individual admitted any wrongdoing, and it was clearly stated in the settlement papers that they neither admitted nor denied the asserted grounds for the cease and desist orders.

### I. Evidence of the Investigation and the Voluntary Settlements Should Be Excluded Because It Has No Relevance To Any Issue In This Case.

Federal Rule of Evidence Rule 402 provides that "evidence which is not relevant is not admissible." FED. R. EVID. 402. The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

---

1 The cease and desist orders also prohibited Messrs. Lovely and Greco from participating in the affairs of an insured depository institution. However, these orders of prohibition were academic at that point, since both gentlemen were by then well along in years and were retired.

evidence." FED. R. EVID. 401. Relevance "exists only as a relation between an item of evidence and a matter properly provable in the case."[2]

The only issue currently before this Court is the amount of damages suffered by Fidelity as a result of the Government's admitted breach of contract. At no point in this litigation has the Department of Justice ever pleaded or alleged that Fidelity was aware of Mr. Greco and Mr. Lovely's conduct (prior to it being revealed in 1993) or that the conduct or the OTS settlement has any impact whatsoever on the issue of damages in this case.

Although the United States is protected by statute from a claim arising out of fraudulent or corrupt practices, 28 U.S.C. § 2514, the Department has not pleaded that statute or any other allegation of fraud as a defense in this case.[3] None of the Defendant's pleadings reference the alleged misconduct by Messrs. Lovely or Greco. This is not surprising, since the purchases in question are alleged by OTS to have taken place in 1984 and 1985, four years or more before the breach of contract giving rise to damages in this case and bear no conceivable relationship to any damage claim or defense that will be asserted during this damages trial.

Evidence of the investigation and voluntary settlements should be excluded because it is not relevant to any issue in this case.

---

[2] 2 WEINSTEIN'S FEDERAL EVIDENCE § 401.02[2] (2d ed.) (quoting the Advisory Committee).

[3] The Department waived its opportunity to assert any such defense when it was not raised in the first responsive pleading. 2 MOORE'S FEDERAL PRACTICE §8.07[3] (3d ed.). The result of this waiver is that all evidence that would relate solely to that defense is excluded from presentation at trial. *Id.*

## II. Evidence of the Investigation and the Voluntary Settlements Is Not Admissible Under Federal Rule of Evidence 608(b) for the Purpose of Impeaching Mr. Greco's and Mr. Lovely's Testimony.

Federal Rule of Evidence Rule 608 would govern the Department's ability to use evidence of the OTS investigation and the voluntary settlements to impeach the credibility of Messrs. Greco and Lovely.[4] An investigation that occurred over ten years ago followed by voluntary settlements without any admission of wrongdoing is not probative of Messrs. Greco and Lovely's character. Rule 608 permits inquiry into instances of misconduct only if "clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery, and embezzlement." *United States v. Moore*, 129 F.3d 1261 (4th Cir. 1997) (citing *United States v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981)). Since the investigation and voluntary settlements do not establish any misconduct by Messrs. Greco and Lovely, evidence of the investigation and settlement would fail to meet the Rule 608 standard for impeachment.

Even if relevant, extrinsic evidence of the investigation and settlement should not be admitted at trial. Rule 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking...the witness' character for truthfulness, may not be proved by extrinsic evidence." FED. R. OF EVID. 608(b).[5] This provision would prohibit the Department from

---

4 Federal Rule of Evidence Rule 609 pertaining to evidence of conviction of a crime would clearly not apply to an OTS cease and desist order, entered as part of a voluntary settlement, which contains no admission of wrongdoing.

5 Several Circuit Courts have upheld this provision. *See, e.g.*, *United States v. McNatt*, 931 F.2d 251, 255 (4th Cir. 1991); *United States v. Rodriguez*, 917 F.2d 1286, 1289-1291 (11th Cir. 1990); *United States v. Mangiameli*, 668 F.2d 1172, 1175-1176 (10th Cir. 1982).

employing any documentary or testimonial evidence related to the OTS investigation and the subsequent settlement to impeach the testimony of Mr. Greco and Mr. Lovely.[6]

The Court should exercise its broad discretion to prohibit the Department of Justice from inquiring about the OTS investigation and settlement during the cross-examinations of Messrs. Greco and Lovely, because that evidence does not speak to either witness's character for truthfulness.[7] Cross-examination on specific instances of conduct is restricted to situations where such evidence is probative of the witness's truthfulness or untruthfulness. 4 WEINSTEIN'S FEDERAL EVIDENCE § 608.22[2][a] (2d ed.) In this case, neither witness admitted to any wrongdoing or misconduct and cooperated fully with the OTS investigation. They settled the OTS claims without admitting or denying any of the allegations made by the OTS.

It is also worth noting that courts have consistently held that evidence of conduct that is more than ten years old is too remote in time to be probative of a witness's character for truthfulness. *See, e.g., United States v. Stoecker*, 215 F.3d 788, 790 (7th Cir. 2000); *United States v. Merida*, 765 F.2d 1205, 1216-1217 (5th Cir. 1985); *United States v. Bari*, 750 F.2d 1169, 1179 (2d Cir. 1984); *United States v. Kennedy*, 714 F.2d 968, 973 (9th Cir. 1983). The

---

6 "It should be noted that the extrinsic evidence prohibition of 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act...[f]or example...that the witness was suspended or disciplined." FED. R. OF EVID. 608 advisory committee's notes.

7 "If probative, at the discretion of the court, [specific instances of conduct] may be inquired into on cross-examination regarding the witness's character for truthfulness." FED. R. OF EVID. 608(B). However, Rule 608(b) "is intended to be restrictive." WEINSTEIN'S FEDERAL EVIDENCE § 608.22[2][c][i] (2d ed.). Evidence of Mr. Greco and Mr. Lovely's conduct is also subject to Federal Rule of Evidence Rule 403 and should be excluded if "its probative value is substantially outweighed by dangers of prejudice, confusion or delay." 4 WEINSTEIN'S FEDERAL EVIDENCE § 608.22[2][c][ii] (2d ed.).

conduct at issue in the OTS investigation took place in 1984 and 1985, more than twenty years ago. Such remoteness in time weighs heavily in favor of Astoria's position that cross-examination on the topic of the investigation and voluntary settlements should be prohibited.[8]

Prohibiting all evidence and questioning regarding the OTS investigation and voluntary settlements also comports with the Court's duty pursuant to Federal Rule of Evidence Rule 611(a)(3) to "protect witnesses from harassment or undue embarrassment." 4 WEINSTEIN'S FEDERAL EVIDENCE § 608.22[2][c][ii] (2d ed.). Mr. Greco and Mr. Lovely's conduct has no bearing on their credibility and it occurred many years ago. To re-open the subject at this point would cause unnecessary embarrassment to these individuals, who are emerging from retirement to assist this Court in determining the amount of damages the Government owes as a result of its breach of contract with Fidelity. Astoria requests that the Court exclude all extrinsic evidence of the OTS investigation and settlement to preclude all questioning on these topics on cross-examination pursuant to Rule 608(b) of the Federal Rules of Evidence.

**Conclusion**

The Department cannot demonstrate that the OTS investigation of Messrs. Greco and Lovely and their voluntary settlements with the OTS had even the slightest impact on the damage analysis or calculations set forth by either party to this case. Additionally, such evidence does not meet the standard for impeachment of the credibility of these witnesses under Federal Rule of Evidence Rule 608. Astoria therefore moves this Court to exclude all evidence

---

8 4 WEINSTEIN'S FEDERAL EVIDENCE § 608.22[2][c][iv] (2d ed.). ("This is true even though remoteness in time, while mentioned in Rule 609, is omitted from Rule 608.")

pertaining to the OTS investigation of Mr. Greco and Mr. Lovely and the voluntary settlements which terminated that investigation.

/s/ Frank J. Eisenhart

Frank J. Eisenhart
Counsel of Record
Catherine Botticelli
Tara R. Kelly
Catherine Stahl
Dechert LLP
1775 I Street, NW
Washington, DC 20006
202.261.33

Attorneys for Plaintiff
Astoria Federal Savings and
Loan Association

March 14, 2007