IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ASTORIA FEDERAL SAVINGS & LOAN ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 95-468C<br>(Judge Thomas C. Wheeler) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE**
**<u>TO PRECLUDE DR. DONALD KAPLAN'S EXPERT REPORT</u>**

Plaintiff Astoria Federal Savings & Loan Association respectfully requests that the Court deny the Defendant's Motion in Limine to preclude Dr. Donald Kaplan's testimony based on his expert report. The subject matter of Dr. Kaplan's demonstrative exhibits do not constitute "a new and undisclosed damages theory," but reflect subject matters already discussed in Dr. Kaplan's expert report and deposition testimony, and in documents previously produced to Defendant. Dr. Kaplan's demonstrative exhibits are derived from documents identified as exhibits by both parties.

Dr. Kaplan's Final Expert Report with Corrected Exhibits 1-22, identified on Plaintiff's Exhibit List and produced to Defendant on February 16, 2007, contains all the data that Defendant now clamors to strike.

Plaintiff provided Defendant with hard copies and electronic versions of Dr. Kaplan's demonstrative exhibits on Monday, April 30, 2007. Defendant filed its Motion in Limine on the evening of May 1, 2007.

**Defendant Has Had Adequate Notice of Dr. Kaplan's Report**

Defendant's claims of unfair surprise are posture and puffery. Defendant has been in possession of Dr. Kaplan's updated material since February 16, 2007, approximately two and a half months before the demonstrative exhibits were circulated. Consistent with its obligations under paragraph 3(d) of the Pretrial Order of September 19, 2006, Plaintiff filed with the Court the List Of Exhibits Plaintiff Expects To Offer Into Evidence At Trial on February 15, 2007. Plaintiff produced to Defendant hard copies of the exhibits on the list the following day, February 16, 2007.

Defendant's statement that it had no notice of Dr. Kaplan's calculations is incorrect. Defendant complains that it had "no notice of any damage claim amounting to $70.872 million." On Revised Exhibit 17, "Total Lost Profits Damages," however, Dr. Kaplan lists two columns "Assuming Astoria Merger," showing a total damage calculation of $127,430,000 and "Assuming No Astoria Merger," showing a total damage calculation of $70,872,000. This document was produced to Plaintiff on February 16, 2007.

Moreover, in paragraph 48 of Dr. Kaplan's report, there is an implication of a but-for world in which there might not have been an Astoria merger. According to Dr. Kaplan, if Fidelity had been sufficiently capitalized in its stock conversion, it would have been able to compete successfully with its peers. In the actual world, however, Fidelity was not sufficiently

capitalized in the stock conversion because of the Government's breach. Fidelity was therefore given no choice but to merge with another bank. Fidelity may not have merged with Astoria in the non-breach world. Dr. Kaplan's report states:

> "Due to the limited proceeds raised in its breach-affected conversion offering, Fidelity's management and its investment banking advisors soon determined that Fidelity did not have sufficient capital to compete with other institutions in its market area, many of which had substantially greater resources. One example was its unsuccessful attempt to acquire another institution in its market area. Absent the breach, Fidelity would have clearly had significant more regulatory capital. thus, by late 1993 or early 1994, management had concluded that selling Fidelity would be in the best interest of its stockholders."

The Defendant's claim of surprise at the concept of a damages calculation without an Astoria merger is disingenuous.

Defendant also contends that it had "no notice...of the new 'leverage ratio'...." On Revised Exhibit 16-B, "Lost Profits Damages Without Astoria Merger, 1995-2014," however, in a column running down the very middle of the page, Dr. Kaplan uses the leverage ratio of 15.8% for each of the twenty years of that calculation. This document was produced to Plaintiff on February 16, 2007.

Defendant had notice that Dr. Kaplan's expert report contained revised exhibits. The description of Exhibit 1314 on Plaintiff's Exhibit List reads "Final Expert Report of Dr. Donald Kaplan ***with Corrected Exhibits 1-22***." (emphasis added). On the front page of the exhibit itself, the all-capitalized typewritten phrase "FINAL EXPERT REPORT (CORRECTED)" is on the top right side.

Defendant raised only a hearsay objection to Exhibit 1314 in its April 2, 2007 filing of its objections to Plaintiff's Exhibit List before Defendant filed its Motion in Limine on May 1. Defendant had ample opportunity to address its further issues with Exhibit 1314 throughout the

innumerable telephone, e-mail, and letter correspondence between the parties regarding the Plaintiff's Exhibit List in the weeks and months following the Plaintiff's February 15 filing.

Plaintiff also respectfully notes that the figures in Dr. Kaplan's corrected exhibits support damages lower in total than in his original report, so the updates are potentially in defendant's favor.

**The Calculations in Dr. Kaplan's Demonstrative Exhibits Are Not A New Theory, Opinion, or Methodology**

Dr. Kaplan's demonstrative exhibits only illustrate and clarify the opinions he conveyed in his expert report. The previously-disclosed calculations contained in the revised exhibits (found on Plaintiff's Exhibit 1314) do not support any new theory, opinion, or cause of action: rather, they serve to provide the court with helpful clarifications of the different ways to calculate Plaintiff's lost profit claim. Each page of Dr. Kaplan's demonstrative exhibits that feature calculations and charts contains a citation to its sources, exhibits on Plaintiff's and Defendant's lists and other filings in the case. The demonstrative exhibits are based firmly in the specific subject matter of Dr. Kaplan's report: Fidelity's damages based on the same Lost Profits, Wounded Bank, Reliance, and Restitution claims found in Astoria's complaint.

**There Is a Strong Presumption Against the Exclusion of Relevant, Helpful Evidence**

Under Federal Rule of Evidence Rule 26(e)(1), a party is required to supplement its expert disclosures "at appropriate intervals…if the party learns that in *some material respect the information disclosed is incomplete or incorrect* and if the additional or corrective information

has not otherwise been made known to the other parties during the discovery process or in writing." *Tracinda Corp. v. Daimer Chrysler AG*, 362 F. Supp. 2d 487, 505 (D. Del. 2005)(emphasis in original). As noted in an order from the case relied upon by the Defendants, *La Van v. United States*, "...experts always are permitted to revise and extend their reports, and indeed are required to do so." No. 90-581C, Order (Fed. Cl. Aug. 2, 2003).

The determination to exclude evidence under Rule 37 for failure to comply with Rule 26 includes evaluation of the following factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the court's order." *Tracinda Corp.*, 362 F. Supp. at 505, citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-905 (3d Cir. 1977).

"Courts must also be mindful that the 'exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Id.* (citation omitted).

The four *Tracinda* factors weigh in favor of denying Defendant's motion. There is no "prejudice" or "surprise in fact" here, because Defendant had the updated materials in its possession for two and a half months. There is nothing to "cure." Dr. Kaplan is prepared and ready to testify as scheduled. To the extent that there would be any "disruption," it would stem from the exclusion of his anticipated testimony and not the allowance of it. Finally, Plaintiff has shown nothing but good faith and willingness to comply with the Court's orders. Not only did Plaintiff include the exhibits on all three versions of its filed Exhibit List—explicitly describing the exhibits as "corrected" on the filing each time—and produced the corrected exhibits, but it

also devoted significant time and effort in subsequent collaborations with Defendant to address Defendant's myriad complaints about Plaintiff's Exhibit List.

Each of the cases cited by the Defendant is inapposite to the present case in both the procedural and factual circumstances. *See e.g., United States v. Diaz*, 189 F.3d 1239, 1246-47 (10th Cir. 1999) (holding that expert testimony about the criminal defendant's subnormal mental functioning was untimely under Fed. R. Crim. Pro. 12.2(b), which requires a defendant in a criminal case to notify the government in writing prior to trial when asserting a defense of mental deficiency); *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1288 (10th Cir. 2002) (finding no clear error of the district court's decision to exclude a fact witness's affidavit that was not produced until the day of the hearings on summary judgment); *Owen v. United States*, 20 Cl. Ct. 574, n.12 (1990) (precluding an expert witness from testifying because the expert did not appear on either of the plaintiff's two witness lists, and was disclosed only two days before the pre-trial conference).

The other two cases cited by the Defendant are also inapplicable to this matter. In those cases, the plaintiffs sought to introduce, through expert testimony, a new cause of action or an entirely different legal theory of damages. For example, in *La Van v. United States,* the plaintiffs sought leave to amend an expert's report beyond the 60 day period permitted by the applicable procedural order. *La Van v. United States*, No. 90-581C, Order (Fed. Cl. Jul. 13, 2000). Judge Hodges, sitting for this Court, noted that the Court encourages parties to "permit reasonable requests for exceptions that are in the interest of justice," but nonetheless denied the plaintiffs leave to amend the expert's report. *Id.* Clarifying this opinion in a subsequent order, Judge Hodges further noted that the basis for the denial was the defendant's representation that

the expert's amended report "addressed new issues that resulted in new causes of action." *La Van v. United States*, No. 90-581C (Fed. Cl. Aug. 2, 2000).

Similarly, in *MRO Communications v. American Telephone & Telegraph Co.*, a case involving a dispute between a telecommunications wholesaler and retailer, the plaintiff retailer's expert sought to supplement his exhibits on the plaintiff's antitrust damage claims and lost profits claims for breach-of-contract with an exhibit showing that the defendant also erroneously overcharged the plaintiff through duplicate and other false billing. No. 98-16716, 1999 WL 1178964, **6 (9th Cir. 1999). Because the exhibit "established a new category of chargeback damages" and did not "correct, clarify, or fill a gap" in the expert's original disclosures concerning the antitrust and lost profits damages, the Ninth Circuit found no clear error in precluding the exhibit. *Id.* at **7.

As noted above, unlike the plaintiffs in *La Van* and *MRO*, Dr. Kaplan is not seeking leave to amend his report and does not offer any evidence that would result in a new cause of action or alternative legal theory for damages. To the contrary, the demonstrative exhibits provided for Dr. Kaplan's testimony simply demonstrate and further clarify the same lost profits theory that Dr. Kaplan presented in his final report and its attached exhibits, which have long been in the Defendant's possession.

**The Defendant Will Have Sufficient Opportunity To Address Its Issues With Dr. Kaplan's Through Cross-Examination**

Defendant is welcome to probe those subjects that it perceives as inconsistencies in Dr. Kaplan's report upon cross-examination. Rule 705 of the Federal Rules of Evidence provides:

"The expert may testify in terms of opinion or inference and give reasons therefore without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." Plaintiff takes issue with Defendant's attempts to exclude important evidence that is better suited to exploration on cross-examination.

**Conclusion**

For the reasons discussed above, Plaintiff respectfully requests that Defendant's Motion in Limine regarding Dr. Kaplan's report be denied.

/s/ Frank J. Eisenhart
Frank J. Eisenhart
Counsel of Record
Catherine Botticelli
Tara R. Kelly
Catherine Stahl
Dechert LLP
1775 I Street, NW
Washington, DC 20006

Attorneys for Plaintiff
*Astoria Federal Savings and Loan Association*

May 2, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2007, a copy of the foregoing **Plaintiff's Response to Defendant's Motion in Limine to Preclude Dr. Donald Kaplan's Expert Report** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Frank J. Eisenhart

May 2, 2007